# EXHIBIT A

 CT Corporation

**Service of Process Transmittal**
11/08/2019
CT Log Number 536600913

TO: BRITTANY ADAMS, Commercial Litigation ? Admin. Assistant
Comcast Corporation
1701 JOHN F KENNEDY BLVD STE C100, ONE COMCAST CENTER
PHILADELPHIA, PA 19103-2848

RE: **Process Served in Massachusetts**

FOR: Comcast Cable Communications  (Cross Ref Name)  (Domestic State: DE)
Comcast Cable Communications Management, LLC (True Name)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | JOAO SAKAI FREITAS & ALINE FREITAS, PLTF. vs. COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC, DFTS. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, Verification |
| **COURT/AGENCY:** | Middlesex Superior Court, Middlesex County, MA<br>Case # 1981CV03205 |
| **NATURE OF ACTION:** | Employee Litigation - Wrongful Termination - 08/03/2018 |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Boston, MA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 11/08/2019 at 12:54 |
| **JURISDICTION SERVED :** | Massachusetts |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days (Document(s) may contain additional answer dates) |
| **ATTORNEY(S) / SENDER(S):** | Diane Nordbye<br>SHAPIRO LAW GROUP, PC<br>300 Trade Center<br>Suite 3700<br>Woburn, MA 01801<br>339-298-2300 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 11/08/2019, Expected Purge Date: 11/13/2019<br><br>Image SOP<br><br>Email Notification,  BRITTANY ADAMS  brittany_adams@comcast.com<br><br>Email Notification,  CAROL SIDERIO  carol_siderio@comcast.com |
| **SIGNED:**<br>**ADDRESS:** | C T Corporation System<br>155 Federal St Ste 700<br>Boston, MA 02110-1727 |
| **For Questions:** | 800-448-5350<br>MajorAccountTeam1@wolterskluwer.com |

Page 1 of  1 / JN

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

## Commonwealth of Massachusetts

MIDDLESEX,SS.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. *1981CV03205*

*Freitas, Jano Sakai*
*et al* , PLAINTIFF(S),

v.

*Comcast Cable Comm.* , DEFENDANT(S)

### SUMMONS

THIS SUMMONS IS DIRECTED TO *Comcast Cable Comm.* (Defendant's name)

**You are being sued.**  The Plaintiff(s) named above has started a lawsuit against you.  A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the *Middlesex Superior* Court.  **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1.  **You must respond to this lawsuit in writing within 20 days.**  If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint.  You will also lose the opportunity to tell your side of the story.  You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff.  If you need more time to respond, you may request an extension of time in writing from the Court.

2.  **How to Respond.**  To respond to this lawsuit, you must file a written response with the court and mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented).  You can do this by:

    a.  Filing your signed original response with the Clerk's Office for Civil Business, *Middlesex Superior* Court, *1200 Trade Center Dr, Woburn, MA 01801* (address), by mail or in person, **AND**

    b.  Delivering or mailing a copy of your response to the Plaintiff's Attorney/Plaintiff at the following address: *300 Trade Center Ste 3700, Woburn, MA 01801*

3.  **What to include in your response.**  An "Answer" is one type of response to a Complaint.  Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint.  Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court.  If you have any claims against the Plaintiff (referred to as counterclaims) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer.  Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit.  If you want to have your case heard by a jury, you must specifically request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer.  You can also respond to a Complaint by filing a "Motion to Dismiss," if you believe that the complaint is legally invalid or legally insufficient.  A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under Mass. R. Civ. P. 12.  If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov/courts/case-legal-res/rules of court.

4.  **Legal Assistance.** You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5.  **Required information on all filings:** The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant, Chief Justice on _November 1_, 20 __19__.

_Michael H. Sulli_

Michael A. Sullivan
Clerk-Magistrate

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.


## PROOF OF SERVICE OF PROCESS

I hereby certify that on _____, 20___, I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4(d)(1-5)):

_____

_____

_____

Dated:_____, 20 ___          Signature:_____

N.B.   TO PROCESS SERVER:

PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX - BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.

|                          |
|--------------------------|
|                   , 20___ |

| CIVIL TRACKING ORDER .(STANDING ORDER 1-88) | DOCKET NUMBER 1981CV03205 | Trial Court of Massachusetts The Superior Court |
|---|---|---|
| CASE NAME: Freitas, Joao Sakai et al vs. Comcast Cable Communications Management, LLC | | Michael A. Sullivan, Clerk of Court Middlesex County |
| TO: Diane K Nordbye, Esq. Shapiro Law Group, PC 300 Trade Center Suite 3700 Woburn, MA 01801 | | COURT NAME & ADDRESS Middlesex County Superior Court - Woburn 200 Trade Center Woburn, MA 01801 |

## TRACKING ORDER - F - Fast Track

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

### STAGES OF LITIGATION                                              DEADLINE

| | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | | 01/30/2020 | |
| Response to the complaint filed (also see MRCP 12) | | 03/02/2020 | |
| All motions under MRCP 12, 19, and 20 | 03/02/2020 | 03/30/2020 | 04/29/2020 |
| All motions under MRCP 15 | 03/02/2020 | 03/30/2020 | 04/29/2020 |
| All discovery requests and depositions served and non-expert depositions completed | 08/27/2020 | | |
| All motions under MRCP 56 | 09/28/2020 | 10/28/2020 | |
| Final pre-trial conference held and/or firm trial date set | | | 02/23/2021 |
| Case shall be resolved and judgment shall issue by . | | 11/01/2021 | |

The final pre-trial deadline is not the scheduled date of the conference. You will be notified of that date at a later time.

Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.

This case is assigned to

| DATE ISSUED 11/01/2019 | ASSISTANT CLERK Debra J Newman | PHONE (781)939-2748 |
|---|---|---|

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Trial Court of Massachusetts The Superior Court |
|---|---|---|

**PLAINTIFF(S):** Jose Sokol Freitas & Alice Freitas
**ADDRESS:** 4 Davderte Drive, Framingham, MA 01701

**COUNTY:** Middlesex

**DEFENDANT(S):** Comcast Cable Communications Management, LLC

**ATTORNEY:** Diane Saraiya
**ADDRESS:** 300 Trade Center, Suite 3700, Woburn, MA 01801

**ADDRESS:** 1500 Market Street 11th floor, East Tower, Philadelphia, PA 19102

**BBO:** 655319

### TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| 599 | Other Tortious Action | F | ☒ YES   ☐ NO |

If "Other" please describe: Wrongful discharge, Wage Act, Domestic Violence & Abuse Leave Act, Negligent infliction of Emotional Distress, Life Insurance, Loss of Consortium

### STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**
(attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses ................................................................. $ 319,700.00
2. Total doctor expenses ................................................................... $
3. Total chiropractic expenses ........................................................... $
4. Total physical therapy expenses ..................................................... $
5. Total other expenses (describe below) .............................................. $
   Subtotal (A): $

B. Documented lost wages and compensation to date .............................. $ 115,000.00
C. Documented property damages to date .............................................. $
D. Reasonably anticipated future medical and hospital expenses ................ $
E. Reasonably anticipated lost wages .................................................. $
F. Other documented items of damages (describe below) .......................... $ 2,440,000.00

Life insurance and debt

G. Briefly describe plaintiff's injury, including the nature and extent of injury:
Debt due to termination of employment (in default on personal, credit card, medical loans due to loss of health insurance,

(foreclosure on their house) and emotional distress and loss of consortium damages

TOTAL (A-F): $ 2,874,700.00

**CONTRACT CLAIMS**
(attach additional sheets as necessary)

Provide a detailed description of claim(s):

TOTAL: $

Signature of Attorney/Pro Se Plaintiff: X _[signature]_     Date: 10/31/19

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

### CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney of Record: X _[signature]_     Date: 10/31/19

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                              MIDDLESEX SUPERIOR COURT
                                            CIVIL ACTION NO.

JOAO SAKAI FREITAS &
ALINE FREITAS

                    Plaintiffs,

v.

COMCAST CABLE COMMUNICATIONS
MANAGEMENT, LLC

                    Defendant.

### VERIFIED COMPLAINT

### PARTIES

1. The Plaintiff, Joao Sakai Freitas (hereinafter referred to as "the Plaintiff" or the "Husband"), is an individual residing at 4 Cavatorta Drive, Framingham, MA 01701. The Plaintiff, Aline Freitas (hereinafter referred to as the "Wife" or "Mrs. Freitas"), is an individual also residing at 4 Cavatorta Drive, Framingham, MA 01701 (collectively "the Plaintiffs").

2. The Plaintiff and Mrs. Freitas may be collectively referred to as "the Plaintiffs."

3. Comcast Cable Communications Management, LLC ("Comcast" or "the Defendant") is an American telecommunications company.

4. Comcast is a limited liability company duly organized under the laws of the State of Delaware, with its headquarters located at 1500 Market Street 11th floor, East Tower, Philadelphia, PA 19102. Comcast maintains a regular place of business in Middlesex County and has a local registered agent, CT Corporation, located at 155 Federal Street, Suite 700, Boston, MA 02110.

## JURISDICTION

5. The Plaintiffs re-allege and incorporate the allegations set forth in paragraphs 1 through 4 above as if set forth herein in full.

6. The Plaintiff filed his Complaints with the Attorney General's Office on or around September 23, 2019 and he was granted the right to seek a private right of action pursuant to M.G.L. c. 149, §150 on September 30, 2019.

7. Jurisdiction is proper in this Court because the Plaintiffs are seeking damages in excess of twenty-five thousand dollars ($25,000.00) pursuant to M.G.L. c. 212, §3, and Defendant's conduct giving rise to the Plaintiffs' cause of action occurred in the Commonwealth of Massachusetts.

8. The Court has personal jurisdiction over the Defendant, who, at all times material hereto, maintained systematic and continuous contacts, regularly transacted business, and regularly availed itself of the benefits of the Courts within the Commonwealth.

## VENUE

9. The Plaintiffs re-allege and incorporate the allegations set forth in paragraphs 1 through 8 above as if set forth herein in full.

10. Venue is appropriate in this county under M.G.L. c. 223, § 1 because Defendant has a usual place of business in this county and both Plaintiffs reside in this county.

## STATEMENT OF FACTS

11. The Plaintiffs re-allege and incorporate the allegations set forth in paragraphs 1 through 10 above as if set forth herein in full.

12. The Plaintiff was originally hired by Comcast on February 21, 2009 for a sales position, following the closure of his business.

13. He was given the nickname "Freight Train" for the multitude of sales he made per day for Comcast with local businesses. He was an exemplary employee when he was healthy, often receiving awards for his performance.

14. He left Comcast in 2012 to return to his home country of Brazil for family reasons.

15. The Plaintiff returned to the United States in 2013 and was again offered a position with Comcast in their newly deployed "Sweep teams."

16. In March of 2016, the Plaintiff was struggling to handle the anxiety and pressure of his

2

employment while going through a difficult divorce from his now ex-wife. He was diagnosed with major depressive disorder in July 2016. Comcast was duly notified and provided evidence of his diagnosis and, after consideration, granted the Plaintiff a leave of absence from June 30, 2016 to January 30, 2017 due to his medical conditions.

17. After returning from leave, Comcast provided the Plaintiff with a customary "ramp" benefit that gave him extra funds during his first 30 days back to prevent him from experiencing "chargebacks" as a result of customer service cancellations and to give him funds to live on until he could begin receiving commissions from sales.

18. Comcast placed the Plaintiff on an insufficient, but company-approved program for his conditions. Under this program, the Plaintiff was unable to receive the proper treatment he needed to recover fully, and on November 1, 2017, his condition worsened. He was diagnosed with generalised anxiety disorder, recurring major depressive disorder, and Post Traumatic Stress Disorder ("PTSD"). During this time, he could not sleep, could not control his overeating, could not focus, could not remember basic tasks required for work, and was overly irritable.

19. The Company also failed to provide him with the tools necessary to succeed in his position. As a result of his various positions throughout his ongoing employment with Comcast, Comcast's system had four separate profiles for the Plaintiff. The system would regularly malfunction and swap his information amongst these several profiles which made it appear on activity logs as if he was not working; or the equipment he was issued would fail, making it impossible for him to do his work.

20. The Plaintiff applied for, and Comcast approved, a second medical leave and short-term disability claim. Again, Comcast was provided notice and evidence of his diagnosis and condition. He focused on his recovery from November 2017 until he was able to return to work on March 8, 2018 with the aid of medication and an adequate treatment plan.

21. Financially, the Plaintiffs struggled to make ends meet while the Plaintiff was undergoing treatment because of poor medical coverage provided by Comcast. The Plaintiff believes Comcast also did not inform their employees of the availability of Aflac Insurance in an underhanded effort to financially force its employees to return to work.

22. On March 8, 2018, the Plaintiff returned to work after his leave of absence and was diagnosed with Attention Deficit/Hyperactivity Disorder ("ADHD"). He was finally provided with medication to treat his condition after having waited two years.

23. During his leave of absence, the Plaintiff received 60% of his base salary, as agreed upon in his contract.

24. However, upon his return to work, the Plaintiff was almost immediately punished by Comcast for having taken a short-term disability leave of absence. Comcast charged the

9

Plaintiff significant fees as a result of his customers cancelling service for not receiving the support promised by Comcast during the period of his leave (known in the company as "chargebacks"). It was management's responsibility to place another agent in his position while he was on leave to keep his customers satisfied. However, because they failed to do so while he was out on leave, the Plaintiff lost the trust of the community he had been selling to for years. Instead, Comcast blamed the Plaintiff for their customers' dissatisfaction and for customers cancelling their services. Furthermore, Comcast failed to provide him the ramp benefits upon his return, as was customary and had been previously provided.

25. Comcast never provided the Plaintiff with the information of where the chargebacks were coming from; he was never given access to their internal system with this information. The Plaintiff worked long hours to search for the customers that discontinued their services and successfully returned some accounts to good status. He alone, was able to successfully convince some the customers to continue their accounts. However, despite his efforts and ability to reverse the problems, Comcast still failed to return the chargeback fees to him.

26. The Plaintiff complained to Human Resources about the chargebacks but was met with indifference and apathy. Instead, Comcast falsely argued that he was not in compliance Comcast's policies as an excuse for not paying him what he was owed.

27. Finally, the Plaintiff was offered a residential sales position with a lower quota in his local community of Framingham and Natick, Massachusetts. Although he did not want the lower quota, he was forced to take the position because his relationships in his previous area had been irrevocably damaged due to Comcast's lack of coverage while he was out on leave. Comcast offered him this position because he was having more success in this territory and there was an open position. Yet, once again, the Plaintiff was denied the customary 30-day ramp benefit. Further, after moving to his new position, Plaintiff failed to get his commissions from the sales that he made in the last month in his old area.

28. Although the Plaintiff was complaint with Comcast's policies, he was continuously treated with utter disregard by Comcast. Upon receiving his transfer to his new position, the Plaintiff applied for his peddler's license; however, he was unable to do so because Comcast's Articles of Organization on file with the City of Framingham were expired.

29. The Plaintiff alerted his supervisors to this problem and was instructed to resolve Comcast's problem to update it himself. It took 30 days for the City of Framingham to issue the Plaintiff a new peddler's license. During this time, he was chastised multiple times for not being on his "turf" and was eventually forced to sign a notice of Corrective Action on June 8, 2018 warning him that he must spend time on his "turf," even though Comcast knew it was illegal for him to do so. When the Plaintiff hesitated to sign such an unfair and illegal document, he was told that if he did not sign the Corrective Action, he would lose his job.

30. Comcast also set the Plaintiff up for failure by supplying him with poor equipment. The Plaintiff informed the IT Department numerous times of the multitude of issues he was

4

experiencing, but his requests were ignored or deemed unfixable again and again.

31. On July 17, 2019, the Plaintiff received a call from his ex-wife who informed him that their 18-year-old daughter was being sexually abused by her stepfather. The Plaintiff was extremely disturbed and upset. He called his therapist on her emergency line, and she recommended that he take two weeks off work and visit his primary care physician or psychiatrist to discuss increasing his prescription dosage. She faxed the doctor's note to Sedgwick Insurance, Comcast's short-term disability provider.

32. The Plaintiff immediately contacted his supervisor, Brandi Jorge ("Ms. Jorge"), to inform her that he was having family troubles, citing his daughter's abuse, and that he would need to take a flex day. The Plaintiff also noted that he may need the following day as well.

33. Ms. Jorge replied to the message, "I'm sorry to hear that John. Keep me posted about tomorrow and update your time in ESS."

34. The Plaintiff was so distraught that he decided to take off through July 20, 2018. He documented this in Comcast's system per the protocol and per Ms. Jorge's instructions. When he logged into the system, he could see he had plenty of flex and vacation days remaining to cover the three days. Despite being notified of the traumatic situation occurring in his personal life and having numerous records on file of his prior diagnoses, Comcast denied his request to use his earned vacation time for these three days, providing no reasoning.

35. On July 23, 2018, the Plaintiff continued to feel unwell, anxious, and was experiencing panic attacks. He fell back into an extreme depression and was unable to perform many major life activities such as eating, sleeping, drinking, talking, showering or brushing his teeth. He sat locked in his dark bedroom for days. He visited his primary care physician doctor, Dr. Yagudin at Middlesex Family Practice, P.C., and was given a doctor's note excusing him from work for an additional week from July 23, 2018 to July 30, 2018. The doctor also increased the dose of his current medication.

36. On or around July 24, 2018, the Plaintiff submitted a request for a short-term medical leave to Ms. Jorge. That morning, the Plaintiff texted Ms. Jorge a picture of the doctor's note he received from Dr. Yagudin excusing him from work, putting her on notice that he would not be attending the meeting on July 30, 2018. On July 30, 2018, text Ms. Jorge again with the photo of the doctor's note provided on July 23, 2018, to ensure that she had received the first message.

37. On Monday, July 30, 2018, the Plaintiff continued to feel anxious, so he visited Dr. Yagudin and his therapist. Dr. Yagudin gave him a note excusing him from work through August 8, 2018. The Plaintiff's therapist also advised him not to return to work and gave him for a note excusing him from work for one month. Both Dr. Yagudin and his therapist faxed doctor's notes to Sedgwick excusing him from work.

38. In response to receiving a calendar invite for July 30, 2018, the Plaintiff emailed Elizabeth Danna, the Human Resources manager, the doctors' notes from Dr. Yagudin and his therapist to inform her that he had notified his manager about his absence.

39. On August 3, 2018, Comcast terminated the Plaintiff allegedly mailing a termination letter to his home. Comcast falsely claimed that he was absent from work from July 17, 2018 until August 2, 2018 without communication, even though he was in contact with his supervisors during this time. The Plaintiff eventually received the August 3, 2018 letter in the doorframe of his house on August 11, 2018.

40. On August 6, 2018, the Plaintiff began to feel uneasy when he was unable to log onto his Comcast equipment when he attempted to email Elizabeth Danna, the Human Resources manager. He was shocked to discover that he had lost all access to his Comcast email and programs as of July 30, 2018. He assumed that Comcast had made an error and missed the doctors' notes, so he sent Ms. Danna both doctors' notes from his private email account, providing them yet again to Comcast.

41. Under the impression he was still employed, the Plaintiff applied for Short-Term Benefits on August 7, 2018 with Sedgwick Insurance.

42. The Plaintiff discovered he had been terminated only when he received the letter on August 11, 2018. The letter stated that, while his benefits were ending due to his termination, this would not impede any Short-Term Disability claims he had pending.

43. However, as a direct result of the Plaintiff's termination, Sedgwick closed his ADAAA claim on September 27, 2018. Backdating his claim to August 2, 2018, the day prior to his termination because Comcast falsely and maliciously reported to Sedgwick that the Plaintiff had voluntarily terminated his employment.

44. On October 4, 2018, after appealing Sedgwick's denial of his short-term disability claim, the claim was closed as a direct result of Comcast's dishonest statements about the facts surrounding his separation from the company. With no other recourse, the Plaintiff was forced to apply for unemployment benefits.

45. Following termination, the Plaintiff was denied unemployment benefits, further placing him in financial distress until he eventually received unemployment benefits on March 19, 2019.

46. Comcast also claimed that they tried to contact the Plaintiff through his company email, but he did not receive any communication from them concerning the absences. Per Comcast's standard policy, the Plaintiff had stopped using his company-issued equipment when he went on leave. However, even though they had his private cell phone number, private email, and an additional emergency contact information, Comcast only tried to contact the Plaintiff through the methods of communication that he was not allowed to use.

47. Comcast has previously claimed the Plaintiff was not in communication on multiple occasions prior to the events of July 17, 2019. Employees are given iPads and cell phones from Comcast with communication applications; however, these applications often do not always work. The Plaintiff often had trouble with these applications during the time he was allegedly not in communication with Comcast. The Plaintiff submitted numerous requests to IT in an attempt to resolve these issues and also to report problems with cell phone coverage, but his requests and reports were ignored.

48. Comcast also retaliated against the Plaintiff by providing false documentation in a custody case. The Plaintiff had requested a temporary child support reduction specifically due to Comcast's actions and his diminished earnings. Responding to a Subpoena Duces Tecum, Comcast falsely claimed that the Plaintiff abandoned his job. This resulted in the Plaintiff being sentenced to jail for three days during Christmas of 2018.

49. As a direct result of Comcast's false documents, the Plaintiff has since had to pay increased child support for months that he cannot afford in order to stay out of jail, even though he was terminated and has been unable to recover and find a job until recently.

50. As a direct result of its negligence, Comcast terminated the Plaintiff despite being abundantly aware that he was seeking treatment as a result of domestic violence within his family unit.

51. Comcast's discrimination and falsehoods have exacerbated the Plaintiff's anxiety and depression. Due to the loss of his health insurance, it has also cost him access to the security and comfort of his primary care physician, whom he trusted and used for over twenty years. Without the assistance of the doctor who has knowledge of his entire medical history, the Plaintiff has had difficult receiving treatment for his anxiety and depression, causing him to suffer more and greater panic attacks. He was humiliated and unable to provide basic needs for his family.

52. Comcast's wrongful termination and denial of unemployment benefits caused the Plaintiffs to default on credit cards, his mortgage, car loan, and personal loan.

53. The Plaintiff filed a Charge of Discrimination with the Massachusetts Commission Against Discrimination ("the MCAD") pursuant to M.G.L. c. 151B on February 19, 2019 and amended this Charge on October 18, 2019.

## COUNT I - WRONGFUL DISCHARGE

54. The Plaintiff re-allege and incorporate the allegations set forth in paragraphs 1 through 53 above as if set forth herein in full.

55. "It is well established that Massachusetts law does not protect at-will employees who claim to be fired for their complaints about internal company policies or the violation of company

rules, even though the employees' actions may be considered appropriate and 'socially desirable.'" *Mercado v. Manny's T.V. & Appliance, Inc.*, 77 Mass. App. Ct. 135, 139 (2010). However, an at-will employee who is discharged for reporting criminal activity to his or her employer is entitled to recover for wrongful discharge. *Shea v. Emmanuel Coll.*, 425 Mass. 761 (1997).

56. The Plaintiff made an internal complaint to his direct supervisor that he could not obtain a peddler's license because Comcast's own Articles of Organization on file with the City of Framingham were expired.

57. The Plaintiff asked for assistance from Comcast to ensure that he was in compliance with the law but received none. He was told to resolve the situation himself, and to continue selling despite having just informed Comcast that this would be illegal due to Comcast's own negligence.

58. In fear of being fired if he did not comply, the Plaintiff continued working without his license until it was eventually approved by the City of Framingham. As much as approximately 80% of the Plaintiff's turf was in Framingham. He was forced to work outside of his turf to avoid illegally peddling, but if he did so, Comcast's equipment did not consider the Plaintiff as working during that time.

59. Comcast retaliated against the Plaintiff by terminating him, in part, because he made internal complaints about its illegal activities by failing to renew its Articles of Organization. Comcast was aware that not only the Plaintiff was illegally peddling, but because its Articles of Organization were expired, effectively every employee who continued to peddle in the City of Framingham was doing so illegally.

60. In terminating the Plaintiff, Comcast financially ruined the Plaintiffs and caused them great emotional distress.

**WHEREFORE**, the Plaintiff respectfully demands that judgment enter on his behalf against the Defendants in the maximum amount allowed by law plus interest, costs and attorneys' fees, and all other amounts which are recoverable by law. Plaintiff requests judgment against the Defendant and an award of lost wages which will adequately compensate him for his damages and losses, together with interest and costs.

## COUNT II – VIOLATION OF WAGE ACT, M.G.L. c. 149 § 148

61. The Plaintiffs re-allege and incorporates the allegations set forth in paragraphs 1 through 60 above as if set forth herein in full.

62. Pursuant to M.G.L. c. 149, § 150, an employee can initiate private civil action against an employer for violations of various sections of the Massachusetts Wage and Hour laws, including the Payment of Wages Act, M.G.L. c. 149, § 148.

63. The Plaintiff filed a Complaint and received permission to pursue a private right of action from the Attorney General's Office on September 30, 2019 as required by M.G.L. c. 149, §150.

64. While the complaint to the Attorney General must be made prior to initiating suit against the employer, this complaint can be made after the employee's termination. Smith v. Winter Place LLC, 447 Mass. 363, 368 (2006).

65. While on short term disability and FMLA leave, Comcast continued paying the Plaintiff the required 60% of his salary from November 2017 until he returned in March 2018. However, upon his return from this leave of absence, Comcast immediately began issuing him chargebacks for any customers that cancelled services during the time period he was on leave.

66. These were commissions that he had rightfully earned, and it was Comcast's responsibility while he was on leave to ensure that customers continued to be satisfied with their services. They failed to provide proper coverage for the Plaintiff's area, which resulted in customer dissatisfaction and service cancellations. Yet, Comcast still deducted the amounts from his pay for their failures, effectively reducing his earned wages during the protected period.

67. "General Laws c. 149, § 148, third par., as appearing in St.1956, c. 259, is violated where an employer fails to pay commissions 'when the amount of such commissions ... has been definitely determined and has become due and payable to [an] employee.'" DeSantis v. Commonwealth Energy Sys., 68 Mass. App. Ct. 759, 766 (2007).

68. The act is a strict liability statute and thus any violation automatically results in damages to the employee. Dixon v. City of Malden, 464 Mass. 437, 452 (2013).

69. "An employee so aggrieved who prevails in such an action shall be awarded treble damages, as liquidated damages, for any lost wages and other benefits and shall also be awarded the costs of the litigation and reasonable attorneys' fees." M.G.L. c. 149, § 150.

70. "The Wage Act proscribes 'special contracts' that exempt employers from its provisions. In a provision of the Wage Act first appeared in St. 1896, c. 241, § 1, the Legislature decreed that '[n]o person shall by a special contract with an employee or by any other means exempt himself from [the Wage Act].' G. L. c. 149, § 148. An agreement to circumvent the Wage Act is illegal even when 'the arrangement is voluntary and assented to.'" Melia v. Zenhire, Inc., 462 Mass. 164, 170 (2012) (citing Camara v. Attorney Gen., 458 Mass. 756, 760-761 (2011)).

71. The Supreme Judicial Court has held that the "accounts-receivable financing system incorporated into [an employee's] contract, which classifies what are in reality wages for work performed as compensation 'advances' that may be recouped, violates the 'special contracts' provision of the Wage Act" and that the method of recoupment under the contract, namely

the 'chargebacks,' constitute[d] improper deductions for purposes of the Wage Act." *Awuah v. Coverall N. Am., Inc.*, 460 Mass. 484, 492 (2011).

72. The chargebacks that Comcast issued qualify as special contracts and are therefore a violation of the Wage Act.

73. Even if it does not qualify as a special contract, the Plaintiff earned those wages and they were wrongfully deducted from his pay because Comcast issued chargebacks to the Plaintiff even though he was on medical leave when the customers cancelled their services.

74. The Plaintiff had completed his required services and the customers' satisfaction was no longer his responsibility, especially because he was on medical leave. But Comcast still deducted it from his pay even though it should have provided adequate coverage for his customers while he was on leave.

75. The Plaintiff informed Comcast on multiple occasions that the chargebacks were unreasonable and that he had not been given the customary 30-day ramp benefit.

76. He spoke to Ms. Danna about being denied two ramps in a short two-month time span and all the chargebacks that were occurring after he returned from leave.

77. On June 21, 2018, he complained to Ms. Jorge about the chargebacks, sending her screenshots of his paycheck and "Sorry boss, I was just trying to swallow this." Two minutes later, he also messaged a screenshot of his own cable bill and wrote "Cannot afford my own cable." He never received any response from Ms. Jorge.

78. Massachusetts has held that, although an employer may exercise discretion in administration of commission plan, commissions which were definitely determined at the time of an employee's termination are not discretionary. *McAleer v. Prudential Ins. Co. of Am.*, 928 F. Supp. 2d 280 (D. Mass. 2013) ("While [the employer] exercises substantial discretion in the administration of the commission plan, the commissions are not themselves discretionary... [The employer] may not avoid liability under the Wage Act merely by asserting retention of discretion not to award commissions.").

79. Comcast has a history of properly failing to pay commissions. Comcast also failed to pay the Plaintiff for commissions earned prior to his transfer to the Natick position on May 21, 2018.

80. Comcast further failed to pay the Plaintiff the commissions he earned for his final ten days working on the Sweeps team.

WHEREFORE, the Plaintiff respectfully demands that judgment enter on his behalf against the Defendants in the maximum amount allowed by law plus interest, including treble damages, costs and attorneys' fees, and all other amounts which are recoverable by law. Plaintiff requests judgment

against the Defendant and an award of lost wages which will adequately compensate him for his damages and losses, together with interest and costs.

## COUNT III – VIOLATION OF WAGE ACT, M.G.L. c. 149 § 148A

81. The Plaintiffs re-allege and incorporate the allegations set forth in paragraphs 1 through 80 above as if set forth herein in full.

82. M.G.L. c. 149 § 148A states, "No employee shall be penalized by an employer in any way as a result of any action on the part of an employee to seek his or her rights under the wages and hours provisions of this chapter." Massachusetts has held that internal complaints of unpaid wages suffice to support a claim of retaliatory termination. *Smith v. Winter Place*, LLC, 447 Mass. 363, 367 (2006).

83. Massachusetts has held that internal complaints of unpaid wages suffice to support a claim of retaliatory termination. *Smith v. Winter Place, LLC*, 447 Mass. 363, 367 (2006) ("A complaint made to an employer (or a manager of the employer) by an employee who reasonably believes that the wages he or she has been paid violate such laws readily qualifies as such an 'action.'").

84. The Plaintiff made numerous complaints to Comcast about the chargebacks and not being given customary 30-day ramp periods.

85. Shortly after making these complaints, he was issued his first disciplinary actions in June 2018 and then terminated on August 3, 2018.

WHEREFORE, the Plaintiff respectfully demands that judgment enter on his behalf against the Defendants in the maximum amount allowed by law plus interest, including treble damages, costs and attorneys' fees, and all other amounts which are recoverable by law. Plaintiff requests judgment against the Defendant and an award of lost wages which will adequately compensate him for his damages and losses, together with interest and costs.

## COUNT IV – VIOLATION OF M.G.L. c. 149, § 52E, DOMESTIC VIOLENCE AND ABUSE LEAVE ACT

86. The Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 85 above as if set forth herein in full.

87. Pursuant to M.G.L. c. 149, § 52E, employers of fifty or more employees must grant up to fifteen days of leave in a twelve-month period to an employee who is either the victim or a family member of a victim of abusive behavior, including domestic violence.

88. The employee must be using the leave from work to "seek or obtain medical attention, counseling, victim services or legal assistance; secure housing; obtain a protective order from

a court; appear in court or before a grand jury; meet with a district attorney or other law enforcement official; or attend child custody proceedings or address other issues directly related to the abusive behavior against the employee or family member of the employee" and the employee cannot be "the perpetrator of the abusive behavior against such employee's family member." M.G.L. c. 149, § 52E.

89. No employer may terminate or discriminate against an employee for exercising his or her rights pursuant to M.G.L. c. 149, § 52E and "upon the employee's return from such leave, the employee shall be entitled to restoration to the employee's original job or to an equivalent position." M.G.L. c. 149, § 52E.

90. On July 17, 2018, the Plaintiff learned from his ex-wife that his daughter's stepfather was abusing her. He attempted to return to work but was too distraught and promptly notified Ms. Jorge in a text message that he would be taking a flex day and might also require the following day. Ms. Jorge responded "I'm sorry to hear that John. Keep me posted about tomorrow and update your time in ESS."

91. During his time out of work, the Plaintiff was struggling to handle the mental and emotional weight of this news and provide support to his daughter. He immediately contacted his therapist who recommended that he take a leave of absence from work to prevent the stress of his job from contributing to the stress of his family problems and causing him to regress into a depressed and anxious state. This also brought back his panic attacks which had been previously treated. The Plaintiff requested to use flex time for July 18, 19, and 20, but this request was ultimately denied without rational reason by Comcast.

92. Unaware of the denial, the Plaintiff promptly applied for short term disability and provided doctor's notes to his supervisors and Ms. Danna to demonstrate that he required additional time off to handle his medical conditions exacerbated by learning of his daughter's sexual abuse.

93. "If an unscheduled absence occurs, an employer shall not take any negative action against the employee if the employee, within 30 days from the unauthorized absence or within 30 days from the last unauthorized absence in the instance of consecutive days of unauthorized absences, provides any of the documentation described in paragraphs (1) to (7), inclusive, of subsection (e)." M.G.L. c. 149, § 52E.

94. Yet, even though Comcast was fully aware of the Plaintiff's traumatic family events, his own medical disabilities, and he provided them with doctor's notes to excuse his absence while he was awaiting approval for short term disability, Comcast terminated the Plaintiff on August 3, 2018 – significantly less than thirty days after his unscheduled absence.

95. Comcast never gave the Plaintiff the opportunity to provide this documentation within the period proscribed by law, as referenced above. The Plaintiff was terminated on August 3, 2018, after Comcast allegedly sent him a letter stating that if they did not receive a response

12

from him prior to July 27, 2018, that he would be terminated. The Plaintiff never received this letter, and Comcast has repeatedly failed to produce any evidence that it was delivered.

WHEREFORE, the Plaintiff respectfully demands that judgment enter on his behalf against the Defendants in the maximum amount allowed by law plus interest, including treble damages, costs and attorneys' fees, and all other amounts which are recoverable by law. Plaintiff requests judgment against the Defendant and an award of lost wages which will adequately compensate him for his damages and losses, together with interest and costs.

## COUNT V – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

96. The Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 95 above as if set forth herein in full.

97. Massachusetts courts have held that the legislature's intent was for Chapter 151B's "broad exclusivity provision . . . to subject all discrimination claims to some administrative scrutiny." *Green v. Wyman-Gordon Co.*, 422 Mass. 551, 555 (1996) (*citing Charland v. Muzi Motors, Inc.*, 417 Mass. 580, 585 (1994)). This was intended to prevent claimants from "sidestep[ping] c. 151B's administrative prerequisites." *Id.* at 555.

98. However, events occurred post-termination which are separate causes of actions unrelated to the c. 151B claims that the Plaintiff has alleged against Comcast.

99. Comcast falsely reported to multiple sources that the Plaintiff voluntarily abandoned his position at Comcast. In doing so, they attempted to financially ruin him and caused him to spend three days in jail during Christmas of 2018.

100. To recover for the tort of negligent infliction of emotional distress, a plaintiff must prove: "(1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomatology; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case." *Conley v. Romeri*, 60 Mass. App. Ct. 799, 801, (2004) (citing Payton v. Abbott Labs, 386 Mass. 540, 557 (1982). To demonstrate a defendant was negligent, a plaintiff must establish that "the defendant owed him a duty of reasonable care, the defendant breached this duty, damage resulted to the plaintiff, and there was a causal relationship between the breach and the damage." *Roe Nos. 1 I v. Children's Hosp. Med. Ctr.*, No. SUCV2011-01212E, 2012 WL 3637246, at *3 (Mass. Super. July 16, 2012), aff'd sub nom. *Roe No. 1 v. Children's Hosp. Med. Ctr.*, 469 Mass. 710 (2014).

101. Firstly, Comcast had a duty to the Plaintiff to exercise reasonable care to avoid causing harm to him. "'[A] defendant owes a duty of care to all persons who are foreseeably endangered by his conduct, with respect to all risks which make the conduct unreasonably dangerous.'" *Jupin v. Kask*, 447 Mass. 141, 147 (2006) (citing *Tarasoff v. Regents of the Univ. of Cal.*, 131 Cal.Rptr. 14, 551 P.2d 334).

13

102. Comcast knew that, in falsely reporting that the Plaintiff that he had abandoned his position, it would undoubtedly cost him and possibly cause significant financial distress to both him and his family. This was certainly a harm that they should have taken reasonably care to avoid by telling the truth.

103. As a direct result of Comcast's dishonesty, negligence, and continued actions after his termination, the Plaintiff suffered panic attacks, weight gain and loss, and other physical ailments. He suffered short term memory loss and easily forgot what he was doing or what he was going to do, severely affecting his ability to do even everyday activities or to learn new activities. For example, Plaintiff would get in the car to the grocery store and forget where he was headed or what he needed to do. Courts have "construed the physical manifestation standard to include symptoms such as headaches or diarrhea, as well as ailments which impair a person's daily life." *Sullivan v. Bus. Gas Co.*, 414 Mass. 129, 139 (1993) (noting such symptoms such as fatigue, headaches, weight loss, sleep disorders, reduced libido, stomach pain, loss of appetite, and others as satisfying the physical manifestation element).

104. The Plaintiff is not just trying to support himself – he has a family that depends on him. Any reasonable person would have suffered similar emotional distress as a result of the stress of worrying if they would be able to receive financial assistance from the state to pay their bills and feed their children.

105. Comcast also falsely provided documents that Plaintiff's voluntarily abandoned the position in response to a subpoena by Plaintiff's ex-wife during custody proceedings. In doing so, it was clearly foreseeable that they would adversely affect his efforts to reduce his child support obligation while he was struggling to get back on his feet.

106. When the Court learned about Comcast's report, the Judge held that the Plaintiff was guilty of contempt for his failure to pay child support and related child-care expenses.

107. The Court relied on Comcast's report and stated, "the Defendant willfully and intentionally abandoned his former employment with Comcast by being absent without leave for three or more consecutive days, resulting in his termination."

108. On December 21, 2018, the Court sentenced the Plaintiff to thirty days in the Worcester County House of Correction unless he purged the sentence with a payment in the amount of $2,500.00.

109. Because the Plaintiff could not afford to purge the sentence, he suffered three days in jail until they could borrow the money from a family friend.

110. While the Plaintiff was in jail, his cell was covered in human feces, exacerbating his asthma. After six requests to see a doctor, he was eventually seen because he was struggling to breathe but was told there was nothing that he could do for him. The Plaintiff sunk into a deeper depression and was almost completely unresponsive. The corrections officers took away his

14

mattress and blanket, and informed him that he had to respond somehow when they checked on him every fifteen minutes to ensure that he was alive and not in distress.

111. When the Plaintiff did finally return home, the experience had emotionally scarred him, and he struggled to handle everyday activities. He regressed into a deeper depressive state, more severe than he had ever been in his life. The shame and stigma from spending time in jail and now having a record only worsened his already fragile mental state and has interfered with his obtaining gainful employment. Any reasonable person would have suffered emotional distress of suffering from the conditions in the jail because they were unable to afford child support, especially when that failure to pay was due to Comcast's own negligence, lies, and retaliation.

WHEREFORE, the Plaintiff respectfully demands that judgment enter on his behalf against the Defendants in the maximum amount allowed by law plus interest, costs and attorneys' fees, and all other amounts which are recoverable by law. Plaintiff requests judgment against the Defendant and an award of lost wages which will adequately compensate him for his damages and losses, together with interest and costs.

## COUNT VI – VIOLATION OF M.G.L. c. 175 § 134A

112. The Plaintiffs re-allege and incorporate the allegations set forth in paragraphs 1 through 112 above as if set forth herein in full.

113. M.G.L. c. 175 § 134A states "If any individual insured under a group life insurance policy hereafter issued becomes entitled under the terms of such policy to convert to another type of life insurance within a specified time after the happening of an event, such certificate-holder shall be notified of such privilege and its duration within fifteen days after the happening of the event; provided, that if such notice be given more than fifteen days, but less than ninety days after the happening of such event, the time allowed for the exercise of such privilege of conversion shall be extended for fifteen days after the giving of such notice. If such notice be not given within ninety days after the happening of the event, the time allowed for the exercise of such conversion privilege shall expire at the end of such ninety days. Written notice by the employer given to the certificate-holder or mailed to the certificate-holder at his last known address, or written notice by the insurer mailed to the certificate holder at the last address furnished to the insurer by the employer, shall be deemed full compliance with the provisions of this subdivision for the giving of notice."

114. When the Plaintiff was working for Comcast, he had a group life insurance policy with New York Life Insurance Company with coverage of $1,500,000 to ensure that his family would be supported should anything ever happen to him.

115. However, when he was terminated by Comcast, he was not notified that he had a certain timeframe in order to transfer the policy and by backdating his termination to August 3, 2019, he rolled over the 30-day cap.

15

116. Thus, the Plaintiff's base age changed on the policy to his current age which made the policy non-transferable. The Plaintiff was forced to drop the policy and removed any financial security for his family.

117. As a result, Comcast is liable for his lack of financial security because they failed to issue written notice in compliance with M.G.L. c. 175 § 134A.

WHEREFORE, the Plaintiff respectfully demands that judgment enter on his behalf against the Defendants in the maximum amount allowed by law plus interest, costs and attorneys' fees, and all other amounts which are recoverable by law. Plaintiff requests judgment against the Defendant and an award of lost wages which will adequately compensate him for his damages and losses, together with interest and costs.

### COUNT VII – LOSS OF CONSORTIUM

118. The Plaintiffs re-allege and incorporate the allegations set forth in 1 through 117 above as if set forth herein in full.

119. To bring a loss of consortium action, the plaintiff must demonstrate that it is the proper party to bring the action, a tortious act caused the injury, and a loss of consortium. *Diaz v. Eli Lilly & Co.*, 364 Mass. 153 (1973).

120. The Commonwealth of Massachusetts recognizes the right of either spouse to recover damages for loss of the other spouse's consortium. *Diaz* at 167-68; *see also Norman v. Mass. Bay Transp. Auth.*, 403 Mass. 303 (1988) (finding that by the very nature of a marriage, spouses depend on one another's society, companionship, love, and support to a degree of intensity not normally present in other relationships and injury to spouse that impairs his or her ability to fulfill the other's needs in that regard ordinarily is uniquely serious, identifiable, and predictable and is reflected in recognition of right of recovery for loss of spousal consortium).

121. Recovery for loss of consortium is available to Plaintiffs based on a negligence action. *Fernandes v. Union Bookbinding Co., Inc.*, 400 Mass. 27, 39 (1987) (holding that the spouse of an injured party can seek loss of consortium because he or she is a person whom the seller of a product might reasonably have expected to be affected if the product caused injury).

122. As described in the afore-mentioned facts, Mrs. Freitas is the proper Plaintiff to bring the action as they are legally married and because her husband, the Plaintiff, suffered considerably as a result of the Defendant's negligent infliction of emotional distress.

123. The Defendant's actions were the proximate cause of the loss of consortium. It was the Defendant's actions that were the direct and proximate cause of the injury to the Plaintiff

because Comcast exasperated his anxiety and depression until the point where he could no longer handle everyday activities, effectively debilitating him.

124. What will constitute a valid injury varies with the relationship of the Plaintiff to the injured relative. See *Hulxin v. Francis Hawey & Sons*, 40 Mass. App. Ct. 692 (1996) (finding diminished social life, absence of marital relations, inability to return to work, need to provide day-to-day care, assumption of outside yard work; plaintiff's frustration, anger, frequent mood swings, and seeming loss of interest in life difficult for the spouse to live with).

125. To some extent, ordinary human experience suggests to the court the magnitude of the loss. In this case, the Plaintiff has suffered loss of employment, the psychological stress of spending three days in jail, the financial burden of being unable to provide for his family, and the continued adverse effects on his mental health. His wife, Mrs. Freitas, lost the companionship of her husband as a result of his deep depression. She was forced to act as a single mother because her husband could not even find the mental strength to shower, get out of bed, or talk. She had to provide for the family alone, care for the children alone, and care for her Husband who could not care for himself. She lost her medical insurance and has suffered physically without necessary cortisone treatments, was forced to work two or three jobs at a time to support her husband and children and had to pay his increased child support amount through her earnings.

126. Therefore, as a result of the negligence of the Defendant which exasperated his fragile mental status, Mrs. Freitas was deprived of her Husband's companionship, comfort, and consortium.

**WHEREFORE**, the Plaintiff respectfully demand that judgment enter on her behalf against the Defendant in the maximum amount allowed by law plus interest, costs and attorneys' fees, and all other amounts which are recoverable by law. Plaintiff request judgment against the Defendant and an award of compensatory damages which will adequately compensate her for his damages and losses, together with interest and costs.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all claims and issues so triable.

## DEMANDS FOR RELIEF

WHEREFOR, Plaintiffs respectfully request that this Honorable Court:

1. Enter a judgment against the Defendant, Comcast Cable Communications Management, LLC;

2. Award Plaintiffs damages, including treble damages where available;

3. Award Plaintiff the costs of the case, including Attorneys' fees;

4. Award Plaintiffs interest, including, but not limited to pre-judgment interest;

5. Allow Plaintiffs' demand for Trial by Jury; and

6. Fashion such other and further relief as the Court deems just and proper.

Dated: _____

## VERIFICATION

I, Joao Sakai Freitas, Plaintiff in the above-captioned action, do hereby declare that I have read the foregoing Verified Complaint and that the facts stated in it are true.  I declare under the Pains and Penalties of Perjury that the foregoing is true and accurate and this declaration was executed this _____ 31st _____ day of _____ October _____, 2019 in _____ Woburn _____, Massachusetts.

_____
Joao Sakai Freitas

## VERIFICATION

I, Aline Freitas, Plaintiff in the above-captioned action, do hereby declare that I have read the foregoing Verified Complaint and that the facts stated in it are true.  I declare under the Pains and Penalties of Perjury that the foregoing is true and accurate and this declaration was executed this _____ 31st _____ day of _____ October _____, 2019 in _____ Woburn _____, Massachusetts.

_____
Aline Freitas

Respectfully submitted,

JOAO SAKAI FREITAS & ALINE FREITAS,

By their Attorney,

_____
Diane Nordbye, Esq.
BBO No. 689319
SHAPIRO LAW GROUP, PC
300 Trade Center, Suite 3700
Woburn, MA 01801
Tel: 339.298.2300
Fax: 339.298.2099
Email: dnordbye@shapirolegal.com