# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                )
JOAO SAKAI FREITAS and           )
ALINE FREITAS,                   )
                                )
                                )
        Plaintiffs,              )
                                )         Civil Action
v.                               )         No. 19-12470-PBS
                                )
COMCAST CABLE COMMUNICATIONS      )
MANAGEMENT LLC,                  )
                                )
        Defendant.              )
_____)

## MEMORANDUM & ORDER

March 27, 2020

Saris, D.J.

Plaintiff Joao Sakai Freitas is a former employee of
Defendant Comcast Cable Communications Management LLC
("Comcast"). Freitas brings eight claims against Comcast:
wrongful discharge (Count I); failure to pay commissions in
violation of the Massachusetts Wage Act, M.G.L. c. 149 § 148
(Count II); retaliation in violation of the Massachusetts Wage
Act, M.G.L. c. 149 § 148A (Count III); violation of a
Massachusetts statute regarding employment leave, M.G.L. c. 149
§ 52E (Count IV); negligent infliction of emotional distress
(Count V); violation of M.G.L. c. 175 § 134A and ERISA (Count
VI); handicap discrimination in violation of M.G.L. c. 151B

1

§ 4(2) (Count VIII); and retaliatory discharge in violation of M.G.L. c. 151B § 4(16) (Count IX). Plaintiff's wife Aline Freitas[1] also brings a claim for loss of consortium (Count VII).

Comcast brought a motion to dismiss Plaintiff's ERISA claim (Docket No. 19) which is **ALLOWED** as unopposed. Comcast also moves to compel arbitration of the remaining claims (Docket No. 19).[2] Plaintiff argues that his arbitration agreement with Comcast is invalid and unenforceable, and Aline Freitas argues that she cannot be bound by the arbitration agreement. For the reasons stated below, the Court **ALLOWS** the Defendant's motion to compel arbitration of Plaintiff Joao Sakai Freitas's remaining claims. The parties shall inform the Court within 14 days of the entry of this Order whether Aline Freitas consents to arbitration.

## BACKGROUND

Where, as here, a motion to compel arbitration is "made in connection with a motion to dismiss or stay, [the court] draw[s] the relevant facts from the operative complaint and the documents submitted to the district court in support of the

---

[1] For clarity, Joao Sakai Freitas is referred to as "Plaintiff" and Aline Freitas is referred to by name.
[2] In the alternative, Comcast moves to stay the current judicial proceedings with respect to the non-ERISA claims pending the outcome of arbitration. Docket No. 19 at 2.

motion to compel arbitration." <u>Cullinane v. Uber Techs., Inc.</u>, 893 F.3d 53, 55 (1st Cir. 2018).

## I.    **Plaintiff's Background**

Joao Sakai and Aline Freitas reside in Framingham, Massachusetts. Comcast is a limited liability company ("LLC") organized under the laws of Delaware and with a principal place of business in Pennsylvania.

Plaintiff was employed by Comcast from 2009 to 2012. After a brief return to his home country of Brazil, Plaintiff rejoined Comcast as a salesperson in 2013. Plaintiff was diagnosed with major depressive disorder in July 2016, while he was in the process of divorcing his now ex-wife. Plaintiff provided evidence of this diagnosis to Comcast, which granted Plaintiff a medical leave of absence from June 2016 to January 2017.

Upon his return, Comcast gave Plaintiff extra funds during his first thirty days back, to support him until he began receiving commissions from sales. Plaintiff refers to this as a "ramp" benefit. Docket No. 9 ¶ 21. In November 2017, Plaintiff was diagnosed with generalized anxiety disorder, recurring major depressive disorder, and PTSD. He applied for and received a second medical leave and short-term disability claim. Plaintiff was then diagnosed with Attention Deficit/Hyperactivity Disorder ("ADHD") and began taking medication for that condition.

Plaintiff returned to work in March 2018. Comcast allegedly did not provide Plaintiff with the ramp benefit upon this second return. Comcast also charged the Plaintiff "chargeback" fees because some of his customers cancelled service when they did not receive promised support during Plaintiff's leave. Plaintiff claims that Comcast had the responsibility to place another agent in his position while he was on leave, to avoid such chargebacks.

Plaintiff then moved to a residential sales position with Comcast in Framingham and Natick. He alleges that he was not given the 30-day ramp benefit upon his move and did not receive commissions for his last month of work in his old area. Plaintiff applied for a peddler's license in his new area, but allegedly could not obtain it because Comcast's Articles of Organization with the City of Framingham were expired. The City issued Plaintiff's license after a 30-day delay. In the intervening time, Plaintiff claims that Comcast "chastised" him for not spending time working in his assigned area. Id. ¶ 33. Comcast allegedly required Plaintiff to sign a notice of Corrective Action on June 8, 2018, which stated that he must spend time in his assigned area.

On July 17, 2018, Plaintiff received a call from his ex-wife informing him that their daughter was being sexually abused by her stepfather. Plaintiff called his therapist, and she

4

recommended that Plaintiff take two weeks off work. The therapist faxed a note to this effect to Sedgwick Insurance, Comcast's short-term disability provider. Plaintiff also contacted his supervisor Brandi Jorge to inform her that because of his daughter's abuse, he would take a flex day that same day (a Tuesday), and possibly would take off the following day (a Wednesday). Jorge acknowledged Plaintiff's request, asked him to keep her informed about his plans for Wednesday, and requested that he update his time in Comcast's internal system.

It is unclear from the pleadings whether Plaintiff ever returned to work. Plaintiff took the remainder of the week off and logged his time accordingly in Comcast's internal system, but Comcast denied his request to use his earned vacation days. Plaintiff visited his primary care physician, Dr. Yagudin, and was given a note "excusing him from work" for an additional week, from July 23 to 30, 2018. Id. ¶ 39. On July 24, 2018, Plaintiff texted Jorge a picture of the note and submitted a request for short-term medical leave.

On July 30, 2018, Plaintiff visited both Dr. Yagudin and his therapist. Dr. Yagudin provided Plaintiff with a note "excusing him from work" until August 8, 2018, and the therapist provided a similar note "excusing" Plaintiff from work for a month. Id. ¶ 41. Both providers faxed the notes to Sedgwick Insurance. On that same day, Plaintiff received a calendar

5

invite from Comcast's Human Resources Manager Elizabeth Danna. In response, Plaintiff again texted Jorge the note from his therapist dated July 23, 2018 and also emailed Danna the notes from Dr. Yagudin and the therapist.

On August 3, 2018, Comcast terminated Plaintiff via a letter mailed to his home. Plaintiff alleges that he did not receive the letter until August 11, 2018. On August 6, 2018, Plaintiff realized he could not access his Comcast email and programs, and so he sent his doctors' notes to Danna from his private email account. Plaintiff applied for short-term benefits with Sedgwick Insurance the next day.

Comcast's termination letter stated that the termination would not impede any pending short-term disability claims. However, Sedgwick Insurance backdated Plaintiff's claim to August 2, 2018, the day before his termination. Sedgwick closed Plaintiff's claim in September 2018 and denied his appeal in October 2018.

Plaintiff also alleges that Comcast retaliated against him by falsely stating, in response to a subpoena duces tecum, that Plaintiff abandoned his job. The subpoena was issued after Plaintiff had requested a temporary child support reduction. For reasons unexplained in the pleadings, Plaintiff was then sentenced to jail for three days during December 2018. Plaintiff has since been obligated to pay increased child support.

Plaintiff also defaulted on credit cards, his mortgage, car loan, and a personal loan.

Plaintiff was also denied unemployment benefits by the Department of Unemployment Assistance, because of a determination that he left work voluntarily and without good cause. Plaintiff appealed, and after a January 2019 hearing, the decision was reversed. The decision stated, "it cannot be concluded that [Plaintiff] violated any expectation of the employer regarding failing to communicate with them." Id. ¶ 57.

Plaintiff had group life insurance coverage through Prudential while employed by Comcast.

## II.  **Comcast Solutions**

In September 2013, Comcast introduced "Comcast Solutions," an alternative dispute resolution program for its employees in Massachusetts. Docket No. 19-1 at 1. Comcast Solutions requires arbitration of certain employment-related legal disputes. Claims related to ERISA are explicitly excluded from the Comcast Solutions program.

Employees who did not want to participate in Comcast Solutions could "opt out" by submitting a designated form no later than November 1, 2013. Employees who did not opt out by that date were automatically enrolled in Comcast Solutions.

Comcast alleges that it provided six notifications to Plaintiff regarding Comcast Solutions. First, Comcast sent a

cover letter and the Comcast Solutions brochure to Plaintiff's home on or about September 23, 2013. Second, Comcast sent Plaintiff an email with a link to the Comcast Solutions brochure and a reminder regarding the November 1, 2013 deadline to opt out.

In addition, Plaintiff digitally acknowledged his receipt of the Comcast Employee Handbook, which included the Comcast Solutions Program Policy, on four additional occasions: in January 2014, February 2015, February 2016, and March 2017. In 2016 and 2017, that digital acknowledgement included the language "I understand that the Comcast Solutions Program is a mutually-binding contract between me and Comcast and that my continued employment with Comcast is confirmation that I am bound by the terms of the Comcast Solutions Program." Docket No. 19-1 at 58, 60.

## III. **Procedural History**

In the fall of 2019, Plaintiff brought a claim to the Massachusetts Commission Against Discrimination ("MCAD"). Plaintiff then filed suit in Massachusetts state court in November 2019. Comcast removed the case to this court in December 2019. After Plaintiff amended his complaint, Comcast filed the present motions in January 2020.

## MOTION TO COMPEL ARBITRATION

## I. **Standard of Review**

The First Circuit has not addressed the appropriate standard by which to review a motion to compel arbitration. Many courts within this circuit have adopted a summary judgment standard. See Commonwealth Equity Servs., LLC v. Ohio Nat'l Life Ins. Co., No. 18-cv-12314, 2019 WL 1470131, at *1 (D. Mass. Apr. 3, 2019) (citing cases). However, some courts analyze a motion to compel arbitration as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), see Baker v. Montrone, No. 18-cv-0913, 2020 WL 128531, at *1 (D.N.H. Jan. 10, 2020), while others treat the motion as outside the Federal Rules of Civil Procedure, see Moss v. Brock Servs., LLC, No. 2:19-cv-00084, 2019 WL 3806375, at *1 n.2 (D. Me. Aug. 13, 2019) ("A motion to compel arbitration is not controlled by Federal Rules of Civil Procedure 12(b)(6) or 12(c) but is made pursuant to the Federal Arbitration Act, 9 U.S.C. § 4.").

While the standard may vary depending on the nature of the dispute, the Court need not resolve the issue here because the facts material to the determination of the arbitrability of the claims are undisputed, even if the facts underlying the claims are disputed.

## II. **Legal Framework**

The Federal Arbitration Act ("FAA") directs courts to treat arbitration agreements as "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

revocation of any contract." 9 U.S.C. § 2. District courts have jurisdiction to compel arbitration pursuant to section 4 of the FAA, which provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

The purpose of the FAA is to "move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 22 (1983). The Supreme Court has described the FAA as establishing "a liberal federal policy favoring arbitration." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011) (quoting Moses H. Cone, 460 U.S. at 24). "[A]rbitration is a matter of contract," and courts must enforce arbitration agreements according to their terms. Rent-a-Center, West Inc. v Jackson, 561 U.S. 63, 67 (2010).

To compel arbitration, a defendant must establish that "a valid agreement to arbitrate exists, that [the defendant] is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope." Nat'l Fed. of the Blind v. The Container Store, Inc., 904 F.3d 70, 79 (1st Cir. 2018) (quoting

<u>Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino</u>, 640

F.3d 471, 474 (1st Cir. 2011)).

**III. <u>Analysis</u>**

    **A. Validity of the Arbitration Agreement**

    *1. Parties' Arguments*

Plaintiff argues that the arbitration agreement is invalid

because he never accepted the Comcast Solutions program. Comcast

contends that Plaintiff demonstrated his acceptance in two ways.

First, Plaintiff did not opt out of Comcast Solutions after its

initial rollout in 2013, despite receiving notice of the opt out

deadline via the U.S. Postal Service and email. Second,

Plaintiff digitally acknowledged receipt of a link to the

Comcast Employee Handbook, which included the "Comcast Solutions

Program Policy," once a year from 2014 to 2017.

    *2. Legal Standard*

To determine whether a valid agreement to arbitrate

exists, federal courts "apply ordinary state-law principles that

govern the formation of contracts." <u>First Options of Chi., Inc.</u>

<u>v. Kaplan</u>, 514 U.S. 938, 944 (1995). In Massachusetts, formation

of a contract requires an offer, acceptance, and consideration.

<u>Doe v. Trs. of B.C.</u>, 892 F.3d 67, 89 (1st Cir. 2018) (citing

<u>Quinn v. State Ethics Comm'n</u>, 516 N.E.2d 124, 127 (Mass. 1987)).

Acceptance "may be inferred from conduct," and is judged by

"objective, not subjective, intent." <u>Greene v. Ablon</u>, 794 F.3d

133, 147 (1st Cir. 2015). "Although silence does not ordinarily manifest assent, the relationship between the parties or other circumstances may justify the assumption that silence indicates assent to the proposal." Polaroid Corp. v. Rollins Envt'l Servs. (NJ), Inc., 624 N.E.2d 959, 964 (Mass. 1993).

In Massachusetts, "where an employer calls special attention to" a personnel policy and an employee continues his at-will employment, that policy can "form the basis of an implied contract." Weber v. Cmty. Teamwork, Inc., 752 N.E.2d 700, 715 (Mass. 2001)(citing O'Brien v. New England Tel. & Tel. Co., 664 N.E.2d 843 (Mass. 1996)); see also McGurn v. Bell Microproducts, Inc., 284 F.3d 86, 91 (1st Cir. 2002) ("[S]ilence in response to an offer may constitute an acceptance if an offeree who takes the benefits of offered services knew or had reason to know of the existence of the offer, and had a reasonable opportunity to reject it.").

Courts often look to an employee's affirmative actions, such as signing a handbook or clicking "I accept" on an online form, to conclude that the employee assented to the terms of an arbitration agreement under Massachusetts law. See Okereke v. Uber Techs., Inc., No. 16-cv-12487-PBS, 2017 WL 6336080, at *6 (D. Mass. June 13, 2017) (finding arbitration agreement was valid where employee clicked "I accept" on Uber application and did not opt out within 30 days); Barasso v. Macy's Retail

Holdings, No. 1:15-cv-103098-ADB, 2016 WL 1449567, at *6 (D. Mass. Apr. 12, 2016) (finding arbitration agreement was valid where employee signed form electronically and did not opt out within 30 days).

However, courts have also found that an employee impliedly accepts an arbitration agreement by failing to opt out where his conduct unequivocally demonstrates consent. See Perez-Tejada v. Mattress Firm, Inc., No. 17-12448-DJC, 2019 WL 830450, at *6 (D. Mass. Feb. 21, 2019) (finding employee accepted arbitration agreement "by failing to opt out and continuing to work," where he received at least three communications warning him that he would be bound if he did not opt out within 30 days); Ellerbee v. GameStop, Inc., 604 F. Supp. 2d 349, 355 (D. Mass. 2009) (holding that an arbitration agreement was binding where manager physically handed employee the terms and stated that by continuing to work employee would be bound by the terms, even if he refused to sign); see also Riviera-Colon v. AT&T Mobility P.R., Inc., 913 F.3d 200, 215 (1st Cir. 2019) (holding under Puerto Rico law that an employee's lack of response to an email manifested intent to accept an arbitration agreement).

*3. Analysis*

Here, Plaintiff's failure to opt out of Comcast Solutions demonstrated implied consent. Comcast mailed Plaintiff the Comcast Solutions Brochure in September 2013. See Narrangansett

Indian Tribe v. Warwick Sewer Auth., 334 F.3d 161, 168 (1st Cir. 2003) (identifying a rebuttable presumption that a document was received if it was mailed with a return address and was never returned); Khath v. Midland Funding, LLC, 334 F. Supp. 3d 499, 514-15 (D. Mass. 2018) (reiterating the principle in the arbitration agreement context). Though Plaintiff does not recall receiving the Brochure, he does not deny receipt under oath. Accordingly, he is presumed to have received the mailing.

The cover letter of the Brochure stated in bold type: "Your Action Required: Read about the program, then decide whether you want to participate." Docket No. 19-1 at 9. The cover letter also provided instructions for submitting the opt-out form. The Brochure itself warned employees that by agreeing to participate in Comcast Solutions, they "waive[d] the right to bring a civil action or have a jury trial for any covered legal claims." Id. at 18. It explained that the outcome of arbitration would be "final and binding." Id. at 16. This mailing provided sufficient notice to Plaintiff.

Furthermore, Comcast sent Plaintiff a reminder email in October 2013 with a hyperlink to the Brochure. Plaintiff also affirmatively acknowledged receipt of Comcast's employment policies, which included the Comcast Solutions policy, in 2014, 2015, 2016, and 2017. In 2016 and 2017, the online acknowledgements stated that "the Comcast Solutions Program is a

mutually-binding contract between [Plaintiff] and Comcast and

that [Plaintiff's] continued employment with Comcast is

confirmation that [he is] bound by the terms of the Comcast

Solutions Program." Id. at 58, 60. While these digital

acknowledgements may not constitute assent on their own, in

these circumstances, the Plaintiff's failure to opt out and

continued employment with Comcast demonstrated implied consent

to the Comcast Solutions policy.

### B. Defendant's Alleged Breach of the Arbitration Agreement

Plaintiff argues that Comcast cannot enforce the

arbitration agreement because Comcast failed to fulfill the

condition precedent of paying for a mediation conducted between

the parties in September 2019, after Plaintiff brought a claim

before MCAD.[3] Comcast maintains that it is not required to pay

for mediation if an employee brings a claim before a federal or

state agency.

Comcast's materials do state that Comcast will pay for

mediation. The Comcast Solutions policy indicates that

mediation, with all costs covered by Comcast, is a required step

before binding arbitration of employee disputes. See Docket No.

19-1 at 13 (stating that "[t]here are no filing fees (or other

---

[3] Plaintiff also argues that Comcast violated a discovery-related
provision in the Comcast Solutions Program Guide. This argument
should be resolved by the arbitrator, for the reasons described
below.

charges)" to the employee during mediation); id. at 32
(providing that Comcast "will cover full costs of Mediation
(unless the [employee] requests otherwise"). As Defendant points
out, the Comcast Solutions materials also state that employees
retain the right to file a charge of discrimination with an
administrative agency such as MCAD. But the materials do not
inform employees that filing a charge of discrimination has any
effect on Comcast's obligation to pay mediation costs. Comcast's
failure to pay for the September 2019 mediation therefore
appears to constitute a breach of contract, but that is
ultimately a legal question for the arbitrator.

Whether Comcast has breached the contract, whether that
breach is material, and whether Comcast should be required to
compensate Plaintiff for the cost of mediation are all questions
"more properly resolved by the arbitrator." Barasso., 2016 WL
1449567, at *10. See also Howsam v. Dean Witter Reynolds, Inc.,
537 U.S. 79, 84-85 (2002) ("Procedural questions which grow out
of the dispute and bear on its final disposition are
presumptively not for the judge, but for an arbitrator, to
decide."); John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543,
557-58 (1964) (holding that an arbitrator should decide whether
the first two steps of a grievance procedure were completed
properly, where those steps were prerequisites to arbitration).
The arbitration agreement does not make clear whether Comcast's

payment of mediation costs is a condition precedent to arbitration. The arbitrator may resolve that question of construction. Cf. HIM Portland, LLC v. DeVito Builders, Inc., 317 F.3d 41, 44 (1st Cir. 2003) (declining to compel arbitration where parties explicitly labeled mediation as a "condition precedent to arbitration," and mediation had not taken place).

### C. Aline Freitas's Loss of Consortium Claim

Plaintiff argues that Aline Freitas should not be compelled to arbitrate her loss of consortium claim, because she is not a party to the arbitration agreement. Comcast responds that her claim is subject to arbitration because it is derivative of her husband's tort claims.

"Under Massachusetts law, loss of consortium is independent from the underlying claim of negligence brought by the injured spouse." Genereux v. Am. Beryllia Corp., 577 F.3d 350, 363 (1st Cir. 2009) (citing Olsen v. Bell Tel. Labs., Inc., 445 N.E.2d 609, 612 (Mass. 1983)); see also Sisson v. Lhowe, 954 N.E.2d 1115, 1119 (Mass. 2011). However, "a prerequisite for liability for loss of consortium is that the injured party . . . has a valid tort claim." Lopez v. City of Somerville, No. 16-CV-11877-LTS, 2018 WL 3104077, at *9 (D. Mass. June 21, 2018) (citing Sena v. Commonwealth, 629 N.E.2d 986, 994 (Mass. 1994) (denying loss of consortium claim where underlying tort claim had failed). "The trend in the law is against allowing suits for

loss of consortium where the injured spouse would be collaterally estopped from litigating the same or similar issues." Fidler v. E.M. Parker Co., 476 N.E.2d 595, 603 (Mass. 1985); see also GGNSC Admin. Servs., LLC v. Schrader, 140 N.E.3d 397, 404 (Mass. 2020) ("[C]laims for recovery based on personal injury, wrongful death, or loss of consortium are not distinct when they derive from the same constellation of facts.").

Here, Aline Freitas's loss of consortium claim "derive[s] from the same constellation of facts" as her husband's tort claims. See id.. Failure of her husband's tort claims in arbitration would likely preclude any recovery on her loss of consortium claim.

During hearing, Plaintiffs' counsel indicated that Aline Freitas might prefer to arbitrate her loss of consortium claim if her husband was compelled to arbitrate. Given the Court's decision to compel arbitration of Joao Sakai Freitas's claim, the parties shall inform the Court within 14 days of the entry of this Order whether Aline Freitas consents to arbitration.

### D. Scope of the Arbitration Agreement

Under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985) (quoting Moses H. Cone, 460 U.S. at 4). The FAA preempts state-law "defenses that apply only to arbitration

18

or that derive their meaning from the fact that an agreement to arbitrate is at issue." Concepcion, 563 U.S. at 339 ; see also Bezio v. Draeger, 737 F.3d 819, 823 (1st Cir. 2013). Accordingly, the FAA preempts state law principles that impose special notice requirements before parties can enter into an arbitration agreement. See Awuah v. Coverall N. Am., Inc., 703 F.3d 36, 45 (1st Cir. 2012).

Here, Plaintiff argues that under Massachusetts law, he cannot be compelled to arbitrate his claims brought pursuant to the Massachusetts Wage Act or M.G.L. c. 149 § 52E,[4] because the arbitration agreement did not specifically provide that those statutory claims were covered by the arbitration clause.

Plaintiff relies on Warfield v. Beth Israel Deaconess Med. Ctr., which held in 2009 that "an employment contract containing an agreement by the employee to limit or waive any of the rights or remedies conferred by [the Massachusetts antidiscrimination statute] is enforceable only if such an agreement is stated in clear and unmistakable terms." 910 N.E.2d 317, 325 (Mass. 2009). Comcast responds that Warfield has been called into question

---

[4] Plaintiff refers to this provision as the "Domestic Abuse and Leave Act." Docket No. 23 at 13-14. M.G.L. c. 149 § 52E requires employers with at least 50 employees to provide Massachusetts employees with up to 15 days of leave from work in any 12-month period if the employee, or a family member of the employee, is a victim of "abusive behavior" and the employee is using the leave to address related issues.

after the U.S. Supreme Court ruled that the FAA preempts state law defenses specific to arbitration agreements. See Concepcion, 563 U.S. at 339 (holding that the FAA preempts state-law defenses to arbitration that "derive their meaning from the fact that an agreement to arbitrate is at issue"); see also Machado v. System4 LLC, 28 N.E.3d 401, 414 n.19 (Mass. 2015) (explaining that if Massachusetts law required arbitration clauses to specifically mention the clauses' applicability to claims under the Massachusetts Wage Act, such a principle "might be preempted" by the FAA).

Plaintiff's argument regarding the state statutory claims likely fails because of the Supreme Court's holding in Concepcion. Even if Warfield remains good law, however, the arbitration agreement here satisfies Warfield's requirement to "clearly and unmistakably" communicate that the two statutory claims at issue are subject to arbitration. Though the Comcast Solutions Brochure does not list covered claims explicitly by statute, the Brochure does state that the arbitration agreement covers "concerns of a legal nature affecting your employment" including "claims for back pay, commissions . . . , [and] claims for discrimination." Docket No. 19-1 at 11-12. Cf. Joulé, Inc. v. Simmons, 944 N.E.2d 143, 153 n.15 (Mass. 2001) (finding arbitration clause made "clear and unmistakable" reference to statutory employment discrimination claims where it covered

disputes related to employment "includ[ing] without limitation, claims of discrimination").

Documents referenced in the Brochure also clearly indicate that state law claims related to wages and leave are covered by Comcast Solutions. See Docket No. 19-1 at 28 (Program Guide listing claims excluded by Comcast Solutions, and stating that all other claims "related to or arising out from any aspect of the employment relationship, including, without limitation, recruiting and hiring, compensation, terms and conditions of employment, and the termination of the employment relationship" are covered); id. at 38 (FAQs stating that covered claims include "[c]laims that you were not permitted to take leave under . . . federal, state or local leave law, as well as claims that you were not reinstated and/or were retaliated against for taking such leave"); id. at  43 (Initial Filing Form listing "[f]ailure to pay owed wages, salary, overtime, bonuses, commissions or other forms of compensation," violations of "federal, state or local leave laws," and "retaliation for raising prior protected legal claims under federal, state or local law," as covered claims). Cf. Barrasso, 2016 WL 1449567, at *9 (upholding arbitration agreement's applicability to Chapter 151B claims because it applied to "all employment-related legal disputes, controversies or claims arising out of, or relating to, employment or cessation of employment, whether

arising under federal, state, or local decisional or statutory law").

Plaintiff's argument regarding the Massachusetts wage and leave claims therefore fails.

## CONCLUSION

The Court **ALLOWS** the Defendant's motion to dismiss Plaintiff's ERISA claim (Count VI), and **ALLOWS** the Defendant's motion to compel arbitration of Plaintiff Joao Sakai Freitas's remaining claims (Counts I, II, III, IV, V, VI,[5] VIII, and IX). The Court defers ruling on Plaintiff Aline Freitas's loss of consortium claim (Count VII). The parties shall inform the Court within 14 days of the entry of this Order whether Aline Freitas consents to arbitration.

SO ORDERED.

/s/ PATTI B. SARIS
Patti B. Saris
United States District Judge

---

[5] Count VI of the Amended Complaint includes both an ERISA claim and a state law claim under Mass. Gen. Laws c. 175 § 134(a). The ERISA claim is dismissed and the state law claim must be arbitrated.